UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

BISHME SMITH,

                                    Plaintiff,

        vs.                                                          5:25-CV-1077
                                                                     (MAD/DJS)
CLARENCE J. SMITH, *et al.*,

                                    Defendants.

_____

BISHME SMITH,

                                    Plaintiff,

        vs.                                                          5:26-CV-05
                                                                     (MAD/DJS)
WILLIAM GEORGE AGENCY, *et al.*,

                                    Defendants.

_____

APPEARANCES:                              OF COUNSEL:

BISHME SMITH
PO Box 7063
Syracuse, New York 13261
Plaintiff, *pro se*

MACKENZIE HUGHES LLP              JENNIFER D. CAGGIANO, ESQ.
Mackenzie Hughes Tower            WILLIAM B. HUNT, ESQ.
440 South Warren Street, Suite 400
Syracuse, New York 13202
Attorneys for Defendants
William George Agency and
Ian Evans in Case No. 26-CV-05

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

On August 12, 2025, *pro se* Plaintiff Bishme Smith filed a complaint against Defendants

Clarence J. Smith, Yolanda A. King, Anthony Mangovski, Esq., Heather A. Vincent, Esq., Julie

A. Cerio in her official capacity as Family Court Judge, Onondaga County Family Court, David

1

M. Primo as Deputy Clerk, Syracuse City School District, Onondaga County Child Protective Services ("CPS"), Michael J. Kerwin Esq., Robin C. Zimpel Esq., and the Onondaga County Attorney. *See* Case No. 25-CV-1077, Dkt. No. 1. Plaintiff alleged claims for "deprivation of parental rights," defamation and slander, intentional infliction of emotional distress, discrimination, procedural due process, retaliation, conspiracy, and malpractice all in connection with Onondaga Family Court matters concerning his minor child, B.S. *See id.*

On January 5, 2026, Plaintiff filed a complaint in a new action against Defendants William George Agency and its employee Ian Evans,[1] Jason Newman in his official capacity as a caseworker for the Office of Children and Family Services, and Yolanda King. *See* Case No. 26-CV-05, Dkt. No. 1. Yolanda King is the only individual named in both cases and she is the mother of B.S. In the second cause of action, Plaintiff alleges that Defendants violated his due process rights, conspired against him, and failed to comply with a court's orders related to the same family court matter that underlies the 2025 case. *See id.*

On February 23, 2026, Magistrate Judge Daniel J. Stewart issued a Report and Recommendation in both cases recommending that the Court dismiss the operative complaints. *See* Case No. 25-CV-1077, Dkt. No. 22; Dkt. No. 26-CV-05, Dkt. No. 20. Although the cases are not identical, because they deal with the same underlying factual background, the Court will address both in a single Memorandum-Decision and Order.[2]

---

[1] Plaintiff alleges that the William George Agency is a private child-welfare agency that retained custody of B.S. as of October 16, 2025, and is responsible for B.S.'s day-to-day care. *See* Case No. 26-CV-05, Dkt. No. 1 at 2. Plaintiff states that Defendant Ian Evans is an employee at the William George Agency who coordinates B.S.'s visitation with family. *See id.*

[2] Throughout this Memorandum-Decision and Order, the Court will refer to Case No. 25-CV-1077 as the "2025 case" or "2025 action" and Case No. 26-CV-05 as the "2026 case" or "2026 action."

For the reasons that follow, the Court finds no clear error in Magistrate Judge Stewart's recommendation that Plaintiff's cases be dismissed.

## I. BACKGROUND

**A.      The 2025 Case**

As stated, Plaintiff filed his initial complaint in the 2025 action on August 12, 2025. *See* Dkt. No. 1.  He also moved to proceed *in forma pauperis* ("IFP").  *See* Dkt. No. 2.  On September 15, 2025, Magistrate Judge Stewart granted Plaintiff's IFP motion, *see* Dkt. No. 5, and issued a Report and Recommendation, recommending that the Court dismiss Plaintiff's complaint for failure to allege state action, a conspiracy, or diversity jurisdiction, *see* Dkt. No. 6.

Plaintiff filed objections to the Report and Recommendation, filed a motion for an emergency preliminary injunction, moved to change the venue of his case, and filed an amended complaint.  *See* Dkt. Nos. 7-10.  This Court denied the motion for a preliminary injunction noting that federal courts generally abstain from interfering in state family court matters.  *See* Dkt. No. 11.  Plaintiff filed a motion for reconsideration of that decision.  *See* Dkt. No. 12.

On December 16, 2025, Magistrate Judge Stewart denied Plaintiff's request to change venue.  *See* Dkt. No. 13.  On December 22, 2025, the Court adopted the recommendations from Magistrate Judge Stewart's Report and Recommendation, denied Plaintiff's motion for reconsideration, and referred Plaintiff's amended complaint to Magistrate Judge Stewart for review.  *See* Dkt. No. 14.

On December 23, 2025, Plaintiff filed an interlocutory appeal of Magistrate Judge Stewart's decision denying his venue motion.  *See* Dkt. No. 15.  That appeal remains pending in the Second Circuit.

On February 23, 2026, Magistrate Judge Stewart issued the Report-Recommendation and Order that is presently before the Court.  See Dkt. No. 22.  Magistrate Judge Stewart recommended that the Court dismiss Plaintiff's amended complaint because some of the Defendants are immune from suit, and Plaintiff failed to sufficiently allege state action, discrimination, a conspiracy, or municipal liability.  *See id.* Magistrate Judge Stewart recommended that Plaintiff not be given leave to amend "given the repetition of previously dismissed claims, the failure to plead cognizable causes of action, and the failure with the filing of this pleading to remedy prior defects . . . ."  *Id.* at 14.

The same day Magistrate Judge Stewart issued the Report-Recommendation and Order, Plaintiff filed a second amended complaint.  *See* Dkt. No. 23.  The second amended complaint appears to be identical to Plaintiff's amended complaint.  *Compare* Dkt. No. 10, *with* Dkt. No. 23.

Plaintiff then filed a motion to vacate the Report-Recommendation and Order and stay the case pending resolution of his venue appeal.  *See* Dkt. No. 24.  Plaintiff also filed objections to Magistrate Judge Stewart's decision.  *See* Dkt. No. 25.  Most recently, on March 7, 2026, Plaintiff filed a motion to amend his complaint which he labeled as an "emergency."  Dkt. Nos. 26, 27.

## B.    The 2026 Case

Plaintiff initiated the second cause of action on January 5, 2026.  *See* Case No. 26-CV-05, Dkt. No. 1.  He also moved to proceed IFP and filed a motion for an emergency temporary restraining order.  *See* Dkt. Nos. 2, 3.  The Court denied Plaintiff's request for emergency relief explaining that "Plaintiff commenced this action on January 5, 2026, alleging that his rights are being violated by various state and private actors relating to the enforcement of several family court orders against him.  This is now the fourth such action Plaintiff has filed in this court relating to this subject matter and in these other actions Plaintiff has routinely sought emergency

4

injunctive relief, which was denied." Dkt. No. 7. The Court also stated its "concerns over the propriety of exercising jurisdiction over this matter, among other potential issues," and declined to rule on Plaintiff's temporary restraining order motion on an expedited basis. *Id.* Plaintiff filed an interlocutory appeal of the Text Order. *See* Dkt. No. 8.

Plaintiff filed a motion to vacate the Text Order, *see* Dkt. No. 11, which this Court denied, *see* Dkt. No. 12. Plaintiff appealed that denial as well. *See* Dkt. No. 14. Plaintiff's appeals remain pending in the Second Circuit.

Counsel for Defendants William George Agency and Ian Evans appeared in the action. *See* Dkt. No. 17. Plaintiff then filed an amended complaint. *See* Dkt. No. 18. On February 23, 2026, Magistrate Judge Stewart issued the Report and Recommendation that is presently before the Court. *See* Dkt. No. 20. Magistrate Judge Stewart engaged in an in-depth explanation of the domestic relations abstention doctrine and recommended that the Court dismiss Plaintiff's amended complaint "because [it] stems entirely from the Family Court action and there is no obstacle to full and fair determination in state courts . . . ." *Id.* at 9.

Plaintiff filed a motion to strike and objections to the Report and Recommendation. *See* Dkt. Nos. 21, 22. Plaintiff also filed a motion requesting that he not be required to pay any fees in the case. *See* Dkt. No. 23. Plaintiff subsequently submitted a motion requesting to supplement the record and a "notice of additional constitutional violations." Dkt. Nos. 24, 25. Counsel for Defendants William George Agency and Ian Evans filed an affidavit in opposition to Plaintiff's motion to supplement. *See* Dkt. No. 26. Plaintiff filed a motion to strike the affidavit. *See* Dkt. No. 29.

## II. DISCUSSION

5

Based on the following, Plaintiff's complaints require dismissal because they concern an area of the law that federal courts often abstain from exercising jurisdiction over and because Plaintiff has not otherwise sufficiently alleged any claims against proper parties for which this Court could exercise its jurisdiction.

## A. Legal Standard

"Generally, when a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 683 (N.D.N.Y. 2015) (citing FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C)). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.'" *Id.* (quoting N.D.N.Y. L.R. 72.1(c)) (footnote omitted). "When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review." *Id.* at 684 (citations omitted). "Similarly, when an objection merely reiterates the same arguments made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review." *Id.* (footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

As Plaintiff is proceeding *pro se*, the Court must review his complaints under a more lenient standard. *See Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003). The Court must "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.

6

1983). Thus, "a document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Although the court has the duty to show liberality towards pro se litigants, . . . there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action *in forma pauperis*." *Moreman v. Douglas*, 848 F. Supp. 332, 333-34 (N.D.N.Y. 1994) (internal citations omitted).

As a result of the numerous amendments in the 2025 and 2026 cases raising similar claims, Magistrate Judge Stewart and the undersigned have already reiterated the reasons Plaintiff's complaints are insufficient to withstand dismissal. However, because Plaintiff is proceeding is *pro se* and has presented specific objections to Magistrate Judge Stewart's recommendations in both cases, the Court will review the issues, *de novo*.

**B.    Abstention**

Plaintiff has been advised on numerous occasions, in both cases, that this Court will abstain from intervening in the state family court matters that underly Plaintiff's claims. *See* Case No. 25-CV-1077, Dkt. Nos. 11, 14; Case No. 26-CV-05, Dkt. Nos. 7, 12, 20.

Specifically, in the 2026 case, Magistrate Judge Stewart recommended dismissal of Plaintiff's amended complaint "because Plaintiff's Amended Complaint stems entirely from the Family Court action and there is no obstacle to full and fair determination in state courts;" therefore, "abstention is proper." Case No. 26-CV-05, Dkt. No. 20 at 9.

Plaintiff states in his objections that his case "does not seek" "a divorce decree, [] a custody award, [] a modification of visitation, or [] reversal of a family court judgment." Dkt. No. 22 at 1-2. He argues that the abstention doctrine therefore does not apply. *See id.* at 2. Plaintiff

7

contends that his allegations assert that Defendants "fabricated restrictions not contained in any order, [] conditions visitation on maternal consent absent judicial authorization, [] imposed monitoring without findings, and [] treated similarly situated parents differently." *Id.* at 3. Plaintiff states "[t]hese allegations challenge executive conduct, not judicial decrees." *Id.* Plaintiff contends his "claims can be resolved by determining" "whether Defendants knowingly misrepresented judicial authority," "whether unauthorized monitoring violated due process" and "whether differential treatment violation equal protection," which "do[e]s not require modification of any custody order." *Id.* at 5.  He also asserts that this case does not involve an ongoing state criminal prosecution, quasi-criminal enforcement action, or a "civil proceeding of the type requiring federal non-interference." *Id.* at 5-6.

Plaintiff's assertions are contradicted by his own filed documents because he expressly seeks modification of visitation rights and a review of family court decisiosn.  In the second amended complaint filed in the 2025 case, Plaintiff requests that the Court "[d]eclare that all challenged orders – including the ex-parte dismissals, the temporary guardianship appointment, and any other orders violating Plaintiff[']s constitutional and statutory rights – are void and of no legal effect."  Case No. 25-CV-1077, Dkt. No. 23 at 38.  Plaintiff also seeks "a permanent injunction enjoining all further email or electronic communications by the opposing parties" and order requiring the state family court judge to recuse herself from Plaintiff's cases.  *Id.*  Plaintiff alleges that Defendants unjustly interfered in his parental rights "causing [him] to lose on a petitioner for modification of custody of B.S. in Onondaga County Family Court."  Id. at 33.

In the 2026 case, Plaintiff's requested relief includes a declaration that he "possessed a constitutionally protected liberty interest in visitation and familial association with his minor child; [and that] Defendants' conduct violated Plaintiff's rights under the First and Fourteenth

Amendments . . . ."  Case No. 26-CV-05, Dkt. No. 18 at 9.  Plaintiff also seeks a preliminary injunction "[p]rohibiting Defendants from denying, delaying, conditions, obstructing Plaintiff's visitation" and "[p]rohibiting Defendants from imposing monitored or supervised visitation absent a specific court order supported by written findings."  *Id.*  He then labels another section as "Statutory and Equitable Relief" and seeks "[a]n order holding Defendants in contempt of court for willful violation of the Family Court visitation order" and "[a]n order requiring policy changes and training at William George Agency to ensure compliance with constitutional standards and Family Court Act . . . ."  *Id.* at 10.

In one of Plaintiff's supplemental filings, he explains that "[t]his action concerns ongoing interference with Plaintiff's parental rights and family relationships while the child is placed in a residential agency."  Case No. 26-CV-05, Dkt. No. 24 at 1.  He states that "[a]lthough the child's mother is the custodial parent, the child is not in her physical custody and is currently placed under the supervision and control of the William George Agency."  *Id.*  Plaintiff alleges that "[d]espite this, the mother is permitted to exercise control over the child's communications, including restricting contact with the child's sibling, without any court order authorizing such conduct."  *Id.*[3]  Also in the 2026 action, Plaintiff filed a motion for a temporary restraining order or preliminary injunction.  *See* Dkt. No. 3.  Plaintiff requests, in part, a restraining order prohibiting Defendants "from denying the plaintiff any visitation with" B.S. and enjoining them "from any future interference with Plaintiff's visitation rights."  *Id.* at 3-4.

---

[3] In the 2026 action, Plaintiff moved to supplement the record.  *See* Case No. 26-CV-05, Dkt. No. 24.  Defendants William George Agency and Ian Evans opposed Plaintiff's motion, *see* Dkt. No. 26, and Plaintiff moved to strike their opposition, *see* Dkt. No. 29.  The Court denies Plaintiff's motion to supplement to the extent he may be seeking to amend his complaint.  The Court has, however, considered his assertions and arguments.  The Court denies Plaintiff's motion to strike Defendants' opposition or, in the alternative, to file a reply.  *See* Dkt. No. 29.

"[T]he Supreme Court's [has] long[] recogni[zed] . . . that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.'"  *Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019) (quoting *In re Burrus*, 136 U.S. 586, 593-94 (1890)).  Therefore, "'[t]he domestic-relations abstention doctrine requires federal courts to abstain from interfering in state cases raising custody or domestic relations issues.'"  *Bulris v. Bulris-Rowell*, No. 1:25-CV-0549, 2025 WL 4081211, *5 (N.D.N.Y. Nov. 24, 2025), *R. & R. adopted*, (N.D.N.Y. Jan. 26, 2026) (quoting *Davila v. Arias*, No. 24-CV-02904, 2024 WL 4593499, *1-2 (E.D.N.Y. Oct. 28, 2024)) (additional citations omitted).  "A plaintiff need 'not request [a federal court] to alter the state court's [domestic relations] determination' outright for a court to abstain from exercising federal question jurisdiction. . . .  Rather, courts must abstain when they 'would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings.'"  *Etheridge v. City of New York*, No. 25-CV-8707, 2026 WL 734913, *7 (S.D.N.Y. Mar. 16, 2026) (quoting *McArthur v. Bell*, 788 F. Supp. 706, 709 (E.D.N.Y. 1992)).

Much like the domestic relations abstention doctrine, "[c]ourts have routinely extended *Younger* abstention to family court proceedings."  *Damon v. New York*, No. 8:23-CV-74, 2023 WL 11965130, *7 (N.D.N.Y. Mar. 28, 2023), *R. & R. adopted*, 2023 WL 11965128 (N.D.N.Y. Apr. 24, 2023) (collecting cases); *see Younger v. Harris*, 401 U.S. 37, (1971); *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 409 (S.D.N.Y. 2014) ("[T]he *Younger* doctrine applies only to three classes of parallel proceedings: (1) pending state criminal proceeding[s]; (2) particular state civil proceedings that are akin to criminal prosecutions; and (3) civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts") (citation and quotation marks omitted).  "*Younger*'s third category applies" where a complaint implicates

ongoing family court matters. *Best v. Pels*, No. 25-CV-1547, 2025 WL 2928901, *7 (S.D.N.Y. Oct. 14, 2025) (collecting cases).

"[T]here are two tightly defined exceptions to the *Younger* abstention doctrine,[—]namely the bad faith [or harassment] exception and the extraordinary circumstances exception." *Hunter v. McMahon*, 751 F. Supp. 3d 246, 254 (W.D.N.Y. 2024) (citation and quotation marks omitted); *see also Jackson Hewitt Tax Serv. Inc. v. Kirkland*, 455 Fed. Appx. 16, 18 (2d Cir. 2012) (summary order); *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002). "To meet the 'bad faith' or 'harassment' exception, 'the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive.'" *Id.* (quoting *Diamond "D" Const. Corp.*, 282 F.3d at 199). "Moreover, the federal plaintiff 'must have no reasonable expectation of obtaining a favorable outcome.'" *Id.* (citations omitted). "And to meet the 'extraordinary circumstances' exception, the federal plaintiff must show that 'the state court [is] incapable of fairly and fully adjudicating the federal issues before it.'" *Id.* (citation omitted); *see also Kugler v. Helfant*, 421 U.S. 117, 124 (1975)). "'[A] plaintiff who seeks to head off *Younger* abstention bears the burden of establishing that one of the exceptions applies.'" *Hunter*, 751 F. Supp. 3d at 255 (quoting *Diamond "D" Const. Corp.*, 282 F.3d at 198).

A lawsuit such as Plaintiff's, "implicates the way that New York courts manage their own . . . custody proceedings—a subject in which 'the states have an especially strong interest.'" *Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel*, 490 F.2d 509, 516 (2d Cir. 1973)). Plaintiff attempts to negate this fact by stating that he is not asking the Court to overturn a family court order and that Defendants have acted outside of their authority to diminish his

11

parental rights.  However, his claims would invariably require this Court to look into the family court matters, determine if the custody determinations were appropriate and if they have been followed or violated, and craft a remedy to resolve any disputes.  That is all within the authority of a family court and an appellate court that reviews family court decisions.  Plaintiff asserts, for example, that he has been unable to visit his son either virtually or in person, *see* Case No. 26-CV-05, Dkt. No. 18 at 3, or that Defendants "knowingly and recklessly repeated and published false statements by slander on the record to the Onondaga County Family Court,"  Case No. 25-CV-1077, Dkt. No. 23 at ¶ 80.  These allegations necessarily implicate this Court getting involved in a state family court matter which is "a subject in which 'the states have an especially strong interest.'"  *Falco*, 805 F.3d at 427.

As to *Younger* abstention, Plaintiff does not provide any legal authority which negates the settled principle that family court matters are ongoing "'judicial proceedings when important state interests are involved.'"  *Kirschner v. Klemons*, 225 F.3d 227, 233 (2d Cir. 2000) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 432 (1982)).  Plaintiff has also failed to provide any information which rebuts Magistrate Judge Stewart's finding that "Plaintiff has not met the high standard of showing that there is 'no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation' and that Plaintiff would 'suffer "great and immediate harm" if the federal court does not intervene.'"  Dkt. No. 20 at 8 (quoting *Diamond D Constr. Corp.*, 282 F.3d at 201).

Accordingly, the Court comes to the same conclusion as Magistrate Judge Stewart that Plaintiff's complaint in Case No. 26-CV-05 warrants application of the domestic relations abstention doctrine and must, therefore, be dismissed.  The Court also independently finds that the

domestic relations abstention doctrine and *Younger* abstention counsel against this Court's intervention in Case No. 25-CV-1077, which, therefore, requires dismissal of the complaint.

Plaintiff argues that his request for monetary damages negates abstention. *See* Dkt. No. 26-CV-05, Dkt. No. 22. He is correct that "[w]here . . . the relief requested also includes monetary damages that are unavailable in the state proceeding, a stay rather than an outright dismissal of the federal damage claims is appropriate." *Gubitosi v. Kapica*, 895 F. Supp. 58, 61 (S.D.N.Y. 1995) (citing *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988); *Thomas v. New York City*, 814 F. Supp. 1139 (E.D.N.Y. 1993)); *see also Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) ("The Supreme Court has declined to reach the issue whether *Younger* applies to claims for money damages, but has noted that even if it does, the federal suit should be stayed, rather than dismissed, if the money damages sought could not be obtained in the pending state proceeding, even if the money damages sought could be obtained in a separate state proceeding"). However, "a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages." *Schottel v. Kutyba*, No. 06-CV-1577, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009); *see also Hunter v. McMahon*, No. 20-CV-18, 2024 WL 4362310, *8 (W.D.N.Y. Sept. 30, 2024) ("Regardless of how [the plaintiff] frames or labels these claims, they arose in the context of a child custody proceeding in state court, and therefore this Court must abstain from exercising jurisdiction over them").

Plaintiff's argument that he seeks monetary damages does not save his claims. First, the crux of his claims does not concern compensatory damages. In Plaintiff's second amended complaint filed in the 2025 case, he expressly asks that this Court "[d]eclare that all challenged ordered . . . are void and of no legal effect" and "[i]ssue a permanent injunction enjoining all further email or electronic communications by the opposing parties," order the family court judge

13

to recuse herself from the case, and order the county attorney to investigation Plaintiff's allegations of abuse and neglect. Case No. 25-CV-1077, Dkt. No. 23 at 38-39. In the 2026 case, Plaintiff expressly seeks "declaratory relief" and "injunctive relief" in addition to monetary damages. Case No. 26-CV-05, Dkt. No. 18 at 8-9. Regardless of how Plaintiff frames his requests for relief, his claims necessarily ask this Court to examine what the family court has done or not done and provide Plaintiff with a different, more favorable outcome when it comes to his ability to visit B.S. and seek relief in family court. That is the kind of case that the domestic relations abstention doctrine and *Younger* abstention were created for. Finally, even if Plaintiff's damages claims are not barred by either abstention doctrine, Plaintiff's complaints must still be dismissed for the reasons that follow.

## C.   Sections 1983 and 1985 Claims

Plaintiff's complaints cannot proceed because he has failed to state any claims. This is in large part due to his failure to name a proper defendant.

As explained in Magistrate Judge Stewart's decisions in the 2025 case, to plead a claim under 42 U.S.C. § 1983 for any alleged constitutional violation, a plaintiff must allege state action. *See* Case No. 25-CV-1077, Dkt. No. 22 at 4; *see also* Dkt. No. 6. Magistrate Judge Stewart concluded that Plaintiff failed to allege state action. *See* Dkt. No. 22 at 5. Magistrate Judge Stewart also discussed Eleventh Amendment and judicial immunities as applicable to the Onondaga County Family Court and Defendants Cerio and Primo. *See id.* at 5-8. He recommended that the claims against those Defendants must be dismissed. *See id.* Magistrate Judge Stewart noted that CPS and the Onondaga County Attorney's Office are not properly named defendants because claims against them would be claims against the County. *See id.* at 8. As to Defendant Syracuse City School District, Magistrate Judge Stewart opined that Plaintiff failed to

14

"allege[] the existence of any official policy or custom that caused him any harm." *Id.* at 12.

Finally, Magistrate Judge Stewart recommended dismissal of Plaintiff's claim under 42 U.S.C. §

1985 for failure to allege a discriminatory conspiracy. *See id.* at 10-11.

In his objections, Plaintiff asserts that "[p]rivate individuals may be treated as state actors

when they are willful participants in joint activity with government officials. A civil rights

conspiracy exists where two or more persons agree to violate constitutional rights." Dkt. No. 25

at 3. In what he names an "Emergency Motion" to supplement the pleading, Plaintiff

acknowledges that some of the named Defendants "are private individuals or attorney," but

contends "the conduct challenged by Plaintiff involve[s] coordinated actions among multiple

individuals participating in the Family Court proceedings" which establishes joint conduct with

state officials. Dkt. No. 26 at 12-13. Plaintiff argues that judicial immunity does not apply

because the individual judicial Defendants acted outside of their judicial functions. *See id.* at 5.[4]

Plaintiff did not respond to Magistrate Judge Stewart's conclusion that the claims against CPS and

the County Attorney's Office should be dismissed. Plaintiff did not address the dismissal of his

claims against the Syracuse City School District but summarily stated that a municipal entity may

be liable where a constitutional violation results from an official policy. *See id.* at 3.

---

[4] In his objections, Plaintiff argues that qualified immunity should not be applied at the pleading
stage. *See* Case No. 25-CV-1077, Dkt. No. 25 at 4. Magistrate Judge Stewart did not address
qualified immunity. *See* Dkt. No. 22. Rather, he discussed only Eleventh Amendment immunity
applying to Plaintiff's claim against the Onondaga County Family Court and judicial immunity
applying to the claims against the individual Defendants acting in their judicial roles. *See id.* at 5-
8. Plaintiff does not address Eleventh Amendment immunity in his objections, and the Court
finds no clear error in Magistrate Judge Stewart's conclusion because "the New York State
Unified Court System is unquestionably an 'arm of the State,' . . . and is entitled to Eleventh
Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (internal
citation omitted).

"'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes "state action."'" *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 322 (2d Cir. 2002) (quoting *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991)) "'To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.'" *Id.* at 324 (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). "Put differently, a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id.* (citing *Spear*, 954 F.2d at 68).

"[T]o survive a motion to dismiss on his § 1983 conspiracy claim, [a plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* at 324-25 (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). "In addition, 'complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'" *Id.* (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)).

16

The Second Circuit, as recently as last month, reaffirmed these principles in an unpublished decision, stating that "'[i]t is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions.'" *Weilburg v. Fitzgerald*, No. 25-976-CV, 2026 WL 948316, *2 (2d Cir. Apr. 8, 2026) (summary order) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). "Moreover, '[a] private actor may be afforded the absolute immunity ordinarily accorded judges performing their authorized judicial functions if the private actor's role is functionally comparable to the roles of those judges, or his acts are integrally related to an ongoing judicial proceeding.'" *Id.* (citation omitted). The Second Circuit concluded that the plaintiff "failed to plausibly allege that [his court-appointed attorney] was a state actor for purposes of Section 1983." *Id.* (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"). The Second Circuit noted that the Plaintiff alleged his court-appointed attorney, the clerk of the local court, and a psychiatrist "conspired to forge documents, submit a false mental-health examination, and commit fraud upon the court" which was insufficient to "plausibly allege that [his attorney] 'acted in concert with [a] state actor to commit an unconstitutional act.'" *Id.* The Second Circuit stated that "[a]lthough [the plaintiff] made conclusory allegations of concerted action, such allegations are insufficient to survive a motion to dismiss." *Id.* (citations omitted).

Courts have also consistently maintained that county entities cannot be sued under § 1983 because the proper defendant is the municipality itself. *See Merritt v. Farrell*, No. 3:24-CV-01542, 2025 WL 3699876, *8 (N.D.N.Y. Apr. 9, 2025), *R. & R. adopted*, 2025 WL 3697432 (N.D.N.Y. Dec. 19, 2025) (dismissing claims against a county child protective services unit)

17

(citing *Friedman v. N.Y.C. Admin. For Children's Servs.*, 502 Fed. Appx. 23, 27 n. 3 (2d Cir. 2012) (summary order)); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").  For example, "[c]ourts have held that an office of a district attorney in New York State is. . . a nonsuable entity." *Garcia v. Westchester Cnty. Dist. Att'y Off.*, No. 21-CV-00348, 2021 WL 411546, *2 (S.D.N.Y. Feb. 4, 2021) (citing *Cano v. Cohen*, No. 1:18-CV-11550, 2019 WL 4933580, *2 (S.D.N.Y. Oct. 4, 2019)).

The Court entirely agrees with Magistrate Judge Stewart's conclusion that Plaintiff has failed to sufficiently allege state action, establish any exceptions to the immunity doctrines, or set forth a conspiracy claim.  Plaintiff alleges that B.S.'s grandfather, Defendant Smith, conspired with attorney Defendant Mangovski, to damage Plaintiff's character by telling the family court that Plaintiff was "mentally ill and violent."  Case No. 25-CV-1077, Dkt. No. 23 at 31.  Plaintiff contends Defendant King and her attorney, Defendant Vincent, were acting under the color of state law when they repeated defamatory statements about Plaintiff and manipulated schools to deny Plaintiff access to B.S.'s records.  *See id.* at 30.  He also summarily asserts that Defendant King and the William George Agency Defendants entered an agreement to obstruct his visitation rights with B.S.  *See* Case No. 26-CV-05, Dkt. No. 18 at 7.  In his objections in the 2025 case, Plaintiff merely restates the law that private individuals can be treated as state actors under certain circumstances and that a conspiracy requires two or more people to agree to something.  *See* Case No. 25-CV-1077, Dkt. No. 25 at 3.

Plaintiff's allegations and objections are wholly conclusory and do not establish that the private actor Defendants were acting under state or engaging in a conspiracy.  It is not sufficient for a plaintiff to assert that two people conspired together and one of them was a state actor.  *See*

*Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity").

Magistrate Judge Stewart also analyzed Plaintiff's claims against the Syracuse City School District. *See* Dkt. No. 22 at 11-12. Magistrate Judge Stewart explained that although the School District can be named a defendant in a § 1983 action, Plaintiff failed to "allege[] the existence of any official policy or custom that caused him any harm." *Id.* at 12. Plaintiff did not object to this claim and the Court finds no clear error in Magistrate Judge Stewart's analysis or conclusion. *See Forrest v. Cnty. of Greene*, 676 F. Supp. 3d 69, 76 (N.D.N.Y. 2023) ("To establish a municipal policy, practice, or custom, a plaintiff must allege evidence of (1) a formal policy endorsed by the municipality; (2) actions taken or decisions made by the municipality's policymakers, which caused the alleged civil rights violation; (3) a practice so widespread that it constitutes 'a custom or usage'; or (4) a failure by the municipality's policymakers to properly train or supervise their subordinates") (quoting *Green v. City of New York*, 465 F.3d 65, 80-82 (2d Cir. 2006)). Plaintiff has not alleged a specific unconstitutional policy or unconstitutional actions taken by final policymakers that would permit a municipal liability claim to proceed.

For all of the aforementioned reasons, Plaintiff's constitutional violation and conspiracy claims pursuant to §§ 1983 and 1985 must be dismissed.

## D.    Other Federal Claims

Plaintiff also seeks to bring claims under 42 U.S.C. § 1981, the Individuals with Disabilities Education Act ("IDEA"), and Federal Education Rights and Privacy Act ("FERPA"). *See* Case No. 25-CV-1077, Dkt. No. 23 at 27-28.

Magistrate Judge Stewart explained the legal standards applicable to each of the statutes and concluded that Plaintiff failed to state any cognizable claims because he did "not allege that

19

he is a member of a racial minority nor that any Defendant acted toward him out of racial animus;" "noncustodial parents in New York lack standing under the IDEA" and "there is no individual liability under the statute;" and "FERPA does not authorize a private cause of action." Dkt. No. 22 at 9-10, 11, 13.

In his objections, Plaintiff summarily asserts that as to the "stigma-plus doctrine," "Government defamation combined with loss of a legal right may constitute a constitutional Violation," and "FERPA protects the privacy of student education records under 20 U.S.C. §1232g." Dkt. No. 25 at 5, 7.  Plaintiff's objections are not specific, and the Court finds no clear error in the related portions of the Report and Recommendation.  *See Knight v. City of New York*, 164 F.4th 173, 177 (2d Cir. 2026) ("[A] district court may review a report and recommendation for clear error when a party's 'objections are nonspecific or merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition'") (quoting *Nambiar*, 158 F.4th at 361).

"Section 1981 'protects the equal right of [a]ll persons within the jurisdiction of the United States to make and enforce contracts' without respect to race.'" *Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 456  (E.D.N.Y. 2014) (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006)) (quotation marks omitted); *see* 42 U.S.C. § 1981(a).  "This section prohibits discrimination 'with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment.'" *Fouche*, 64 F. Supp. 3d at 456 (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004)).

"'To state a claim under Section 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the

activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).'" *Id.* at 457 (quoting *Gaddy v. Waterfront Comm'n*, No. 13-CV-3322, 2014 WL 4739890, *5 (S.D.N.Y. Sept. 19, 2014)). "'Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated.'" *Id.* (quoting *Haggood v. Rubin & Rothman, LLC*, No. 14-CV-34, 2014 WL 6473527, *7 (E.D.N.Y. Nov. 17, 2014)); *see also Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988). "Thus, 'to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.'" *Williams v. New York City Hous. Auth.*, No. 05-CV-2750, 2007 WL 4215876, *4 (S.D.N.Y. Nov. 30, 2007)).

"A stigma-plus claim requires that a plaintiff show '(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Kennedy v. Hirsch*, No. 21-3155, 2023 WL 2564026, *2 (2d Cir. Mar. 20, 2023) (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). "Additionally, the 'stigma' and 'plus' must be 'sufficiently proximate,' a requirement that is satisfied 'where (1) the stigma and plus would, to a reasonable observer, appear connected – for example, due to their order of occurrence or their origin – and (2) the actor imposing the plus adopted (explicitly or implicitly) those statements in doing so.'" *Id.* (quoting *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005)).

As to Plaintiff's FERPA claim, "'there is no private right of action under FERPA[.]'" *Close v. Bedford Cent. Sch. Dist.*, No. 23-CV-4595, 2024 WL 3427213, *12 (S.D.N.Y. July 16, 2024) (quoting *Capone v. Patchogue-Medford Union Free Sch. Dist.*, No. 04-CV-2947, 2006 WL

21

8440257, *6 (E.D.N.Y. Sept. 15, 2006)) (collecting cases). As to the IDEA claim, "'[a]lthough the IDEA provides for a federal cause of action to enforce such rights, it imposes a requirement that plaintiffs first exhaust administrative remedies.'" *Id.* at *13 (quoting *S.W. v. Warren*, 528 F. Supp. 2d 282, 292 (S.D.N.Y. 2015)). It does not, however, "'provide for individual liability.'" *Id.* (quoting *Jenn-Ching Luo v. Baldwin Union Free Sch. Dist.*, No. 10-CV-1985, 2011 WL 941263, at *5 (E.D.N.Y. Mar. 15, 2011)). Likewise, "'compensatory damages are unavailable under the IDEA.'" *Id.* (quoting *Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 102 (2d Cir. 2024)); *see also Vazquez ex rel. J.V. v. N.Y.C. Dep't of Educ.*, No. 22-CV-3360, 2024 WL 1332822, *4 (S.D.N.Y. Mar. 28, 2024).

The Court finds no clear error in Magistrate Judge Stewart's recommendations to dismiss the § 1981, FERPA, and IDEA claims because Plaintiff has not alleged (1) that he has a right to bring a FERPA claim; (2) any facts which state a plausible discrimination claim; or (3) that he has exhausted an IDEA claim or seeks anything other than compensatory damages related to that claim. Therefore, Plaintiff's allegations are insufficient and those claims are dismissed.[5]

**E.    Amendment**

In the 2025 case, Magistrate Judge Stewart expressly recommended denying Plaintiff leave to amend his pleading. *See* Dkt. No. 22 at 14. In the 2026 case, Magistrate Judge Stewart

---

[5] In the 2025 case, Magistrate Judge Stewart recommended dismissing Plaintiff's state law claims once all the federal claims are dismissed because of a lack of subject matter jurisdiction. *See* Dkt. No. 22 at 13-14. Plaintiff does not object to this. *See* Dkt. No. 25. The Court agrees that because the Court has dismissed the federal claims, his state law claims should also be dismissed. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction'" (quoting 28 U.S.C. § 1367(c)(3)). As already explained, Plaintiff's claims sound largely in state family court issues such that it would not advance judicial economy, convenience, fairness, and comity for this Court to exercise supplemental jurisdiction over the state law claims.

recommends dismissing Plaintiff's complaint without prejudice because application of the abstention doctrine deprives the Court of subject matter jurisdiction, but does not address amendment. *See* Dkt. No. 20. Plaintiff states in his objections in the 2025 case that leave to amend is generally granted to *pro se* litigants. See Dkt. No. 25 at 7-8. He does not present any argument, however, as to why leave to amend should be granted in his case.

Plaintiff is correct that "'[a] *pro se* complaint should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)) (additional quotation marks omitted). However, "[l]eave to amend may properly be denied if the amendment would be "futil[e].""" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "'Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Jang v. Trs. of St. Johnsbury Acad.*, 771 Fed. Appx. 86, 88 (2d Cir. 2019) (summary order) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

Courts have held that amendment would be futile where dismissal is based on abstention. *See, e.g.*, *Hirsch v. Kairey*, No. 22-CV-6716, 2023 WL 4902749, *5 (E.D.N.Y. Aug. 1, 2023) ("Because *Younger* and the domestic relations abstention doctrine preclude this Court's exercise of jurisdiction, any attempt to amend the complaint would be futile") (citing *Deem v. DiMella-Deem*, 800 Fed. Appx. 62, 63 (2d Cir. 2020) (summary order) (affirming, on domestic relations abstention grounds, district court's dismissal of pro se plaintiff's complaint without leave to amend)); *Phillips v. Schenectady Child Support Unite*, No. 1:24-CV-853, 2025 WL 895035, *15 (N.D.N.Y. Mar. 24, 2025), *R. & R. adopted*, 2025 WL 1191320 (N.D.N.Y. Apr. 24, 2025*), appeal*

*dismissed* (Sept. 18, 2025) ("[T]he *Rooker-Feldman* doctrine, *Younger* abstention doctrine, Domestic Relations abstention doctrine, and Section 1673 issues cannot be cured by a better pleading. . . . Accordingly, it is recommended that the complaint be dismissed in its entirety without prejudice and without opportunity to amend"); *Dean v. Doberman*, No. 21-CV-8320, 2023 WL 2480012, *10 (S.D.N.Y. Mar. 13, 2023).

In the 2025 case, Plaintiff has filed three complaints. *See* Case No. 25-CV-1077, Dkt. Nos. 1, 10, 23. In the 2026 action, Plaintiff has filed two complaints. *See* Case No. 26-CV-05, Dkt. Nos. 1, 18. Across all five complaints, the issue remains the same: Plaintiff is asking the Court to engage in something it cannot—he wants the Court to interfere in a family court matter concerning custody and visitation with his minor son to address the acts taken or not taken by judges, attorneys, and private individuals in connection with that matter. For all of the reasons stated in this Memorandum-Decision and Order, Plaintiff has not established this Court's jurisdiction to consider his claims under any cognizable legal theory. As such, leave to amend would be futile.

**F.      Motions to Strike, Vacate, Void, or Stay Proceedings**

In both cases, Plaintiff moves to strike Magistrate Judge Stewart's decision, arguing that he did not have jurisdiction to issue them because Plaintiff's appeals are pending in the Second Circuit. In the 2025 action, Plaintiff appealed Magistrate Judge Stewart's denial of Plaintiff's motion to change venue. *See* Case No. 25-CV-1077, Dkt. No. 15. In the 2026 case, Plaintiff appealed the Court's Text Order which declined to address Plaintiff's motion for temporary restraining order on an expedited basis. *See* Case No. 26-CV-05, Dkt. No. 8.

"When Congress wants to authorize an interlocutory appeal and to automatically stay the district court proceedings during that appeal, Congress need not say anything about a stay. At

24

least absent contrary indications, . . . [the Supreme Court's decision in] *Griggs* . . . requires an automatic stay of district court proceedings that relate to any aspect of the case involved in the appeal." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743-44 (2023); *see Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56. "By contrast, when Congress wants to authorize an interlocutory appeal, but not to automatically stay district court proceedings pending that appeal, Congress typically says so." *Coinbase*, 599 U.S. at 744; *see also New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989) ("[T]he filing of a notice of appeal only divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal"). "A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals." *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (citing *United States v. Rivera*, 844 F.2d 916, 921 (2d Cir. 1988)).

"The divestiture of jurisdiction rule is, however, not a *per se* rule. It is a judicially crafted rule rooted in the interest of judicial economy, designed 'to avoid confusion or waste of time resulting from having the same issues before two courts at the same time.'" *Id.* (quoting *United States v. Salerno*, 868 F.2d 524, 540 (2d Cir. 1984)). "Hence, its application is guided by concerns of efficiency and is not automatic." *Id.* The Second Circuit has noted that it "fail[s] to see any efficiency in allowing a party to halt district court proceedings arbitrarily by filing a plainly unauthorized notice of appeal which confers on this court the power to do nothing but dismiss the appeal." *Id.* at 251-52.

Magistrate Judge Stewart's decisions did not address venue nor the Court's decision to consider Plaintiff's injunctive relief motion on a normal timeline. Neither Magistrate Judge Stewart nor this Court have dealt with an issue that is currently being dealt with by the Second Circuit. Therefore, Magistrate Judge Stewart did not lack jurisdiction to issue the Report and

Recommendations and this Court does not lack jurisdiction to review them.  Plaintiff's motions to strike or vacate are denied.[6]

### III.  CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Stewart's Report-Recommendation and Orders (Dkt. No. 22 in 5:25-CV-1077 and Dkt. No. 20 in 5:26-CV-05) are **ADOPTED in their entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaints (Dkt. No. 23 in 5:25-CV-1077 and Dkt. No. 18 in 5:26-CV-05) are **DISMISSED** without prejudice and without leave amend; and the Court further

**ORDERS** that Plaintiff's motion to strike (Dkt. No. 24) and motion to supplement (Dkt. No. 26) in Case No. 5:25-CV-1077 are **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion for a temporary restraining order (Dkt. No. 3), motion to strike (Dkt. No. 21), motion for an order (Dkt. No. 23), motion to supplement (Dkt. No. 24), and motion to strike (Dkt. No. 29) in Case No. 26-CV-05 are **DENIED**; and the Court further

---

[6] In the 2026 case, Plaintiff also filed a "motion for an order pursuant to 28 U.S.C. 1915; Fed. R. Civ. P. 60(a); the First and Fourteenth Amendments to the United States Constitution and the Court's inherent authority to manage its docket."  Dkt. No. 23.  In the letter, Plaintiff states that despite being awarded IFP status, he has "accrued fees" in his cases and there are restrictions on his docket access.  *Id.* at 2.  Plaintiff was provided with the Court's Pro Se Handbook in both of his cases.  See No. 25-CV-1077, Dkt. No. 3; No. 26-CV-05, Dkt. No. 4.  The Pro Se Handbook instructs *pro se* litigants that they "are not exempt from other fees and costs in their actions, including but not limited to copying and witness fees."  N.D.N.Y. Pro Se Handbook: The Manual for the Litigation filing a Lawsuit without Counsel, at 19.  The Pro Se Handbook also notes that *pro se* litigants are not automatically permitted to file documents electronically but may file a motion for permission to do so.  *See id.* at 20-21.  The Court has reviewed all of Plaintiff's cases in the Northern District of New York and it does not appear he has ever moved to file electronically, nor does there appear to be any orders restricting his ability to file documents through the Clerk's Office.  Plaintiff's motion is denied, and, because his cases are being dismissed, no such motion would likely to be successful in the near future.

**ORDERS** that the Clerk of the Court shall file this Memorandum-Decision and Order in both cases 5:25-CV-1077 and 5:26-CV-05; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close both cases;

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated:  May 11, 2026
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

27